JAMES D. YERRINGTON *v.* RUFUS GREENE and another, Administrators.

The death of the employer, who by contract has retained a clerk and salesman in his business for the term of three years at a salary, before the expiration of the stipulated term of service, excuses the further performance of the contract; and no action can be maintained against the administrators of the employer, for their refusal longer to employ the clerk and salesman.

ASSUMPSIT against the defendants, as administrators on the estate of William W. Keach, for the recovery of damages for the breach of a contract by which the said Keach agreed to employ the plaintiff, at a salary, for three years, in his business.

At the trial of the case, under the general issue, at the March term of this court, 1863, before the Chief Justice, with a jury, it was proved by letters interchanged between the plaintiff, who then resided in Boston, and the intestate, who was a manufacturing jeweller, in Providence, that on the 19th day of March, 1860, the former agreed to serve the intestate, and the latter agreed to employ the plaintiff, as a clerk and salesman, having charge of the intestate's office, or place of sale, in New York, and as agent in his business in making occasional trips for him to Philadelphia for the term of three years from the first day of April, 1860, or as soon thereafter as the plaintiff could obtain a release from his employment in Boston, at a salary of twelve hundred dollars, for the first year, of thirteen hundred dollars, for the second year, and of fifteen hundred dollars, for the third year; that on the sixteenth day of April, 1860, the plaintiff entered into the service of the intestate, under this contract, and continued to serve him under it until the first day of April, 1861, when the said Keach died; that the defendants, as administrators of said Keach, continued to employ the plaintiff, at the stipulated salary, until the sixteenth day of June, 1861, when, having discontinued the office in New York, and removed what goods were there to Providence, where Keach had another place of sale, they declined longer to employ the plaintiff, or to pay him his salary, though from that time to the date of the writ, he had been ready and willing to

serve in said business, and had tendered his services in it to them, and had been unable to procure other employment; that the defendants, as administrators of Keach, wound up his business by selling the goods removed from New York, with other goods of his, at Providence, and had been allowed by the Court of Probate, for their services as administrators, the sum of three thousand dollars.

Upon this state of facts, the Chief Justice instructed the jury, that the death of Keach terminated this contract of service, and that no recovery of damages could be had of the defendants, as his administrators, for their refusal to employ the plaintiff under it afterwards; whereupon, the jury having returned a verdict for the defendants, the plaintiff, having duly excepted thereto, now moved for a new trial, on the ground of error in law in said instruction.

*Browne, for the plaintiff :—*

It is assumed as not doubted or denied, that if Keach had lived, he would have been obligated, and could have been compelled to perform his contract. 1 Roll Abr. Condition G; *Walton v. Waterhouse,* 2 Wms. Saund. 421, notes; *Hall v. Wright,* 1 Ellis, Blackb. & Ellis, 746. If Keach must have performed the contract had he lived, then his administrators must, or pay damages; for the *general well-settled rule* is, that parties to contracts bind *not only themselves,* but their personal *representatives ;* also, that death is, in general, no revocation of contracts. Chitty on Contracts, 98; 1 Parsons on Contracts, 107–111; 2 Ib. 43–45. *Causes* of action, *ex contractu,* survive by common law, and may be enforced by or against the representatives of the deceased party having assets; and *actions ex contractu,* the same. *Hunt v. Whitney,* 4 Mass. 622; *Middleton v. Robinson,* 1 Bay, 58; *McEvers v. Pitkin,* 1 Root, 216; 2 Williams on Executors, 1464–1467, *passim.* The *only* exception to this rule is where the contract is *personal,* as a breach of promise to marry, or requires the taste or professional skill of the decedent to perform it. Chitty, 98; 1 Parsons on Contracts, 107–111; 2 Ib. 43–45; *Wentworth v. Cock,* 10 Adol. & Ellis, 42, (37 Eng. C. L. R. 33); *Siboni v. Kirkham,* 1 Mees. & Welsb. 418–423; *Marshall v. Broadhurst,* 1 Tyrwhitt, 348; *School District No.* 1 v. *Dauchy,*

25 Conn. 530 ; *Taylor et al.* v. *Caldwell et al.* 8 Law Times Rep. 356.

The case at bar most clearly does not fall within any of these exceptions. There is nothing in this contract personal to Keach, or requiring professional skill or taste in the sense of the cases. Hundreds of other persons might have completed the contract as well as he. Such business is frequently continued by personal representatives. On the contrary, the cases like the one at bar are most clearly excluded from the exceptions by the cited cases. *Siboni* v. *Kirkham*, 1 Mees. & Welsb. 418; *Quick* v. *Ludbarrow*, 3 Bulstr. 30. Personal representatives may carry on the business of decedents so as to perform his contracts, and must do so or pay damages for breach of said contracts, as far as they have assets. Chitty on Contracts, 98 ; 2 Parsons on Contracts, 45 ; *Wentworth* v. *Cock*, 10 Adol. & Ellis, 47, (37 Eng. C. L. Rep. 33); *Taylor et al.* v. *Caldwell et al.* 8 Law Times Rep, 356 ; *Marshall* v. *Broadhurst*, 1 Tyrwhitt, 349, 350 ; 2 Williams on Executors, 1469, 1470.

There is a class of cases, where the *destruction of the thing*, which is the subject matter of the contract, has, under peculiar circumstances, sometimes been held to annul the contract; as, the death of a horse before delivery, or the burning of a leased house before the lessee had taken possession. See *Taylor et al.* v. *Caldwell et al.* cited above. But this class of cases has no application to this case; for there has, in the case at bar, been no destruction of the thing which was the subject matter of contract, except by act of the defendants ; and it is a class of cases that applies to living parties, as well as to cases where one of the parties is dead.

*James Tillinghast, for the defendants:*—

It is believed that this action is without precedent. This of itself, though not perhaps conclusive, is, certainly, from the frequent occasions that must have occurred for bringing such actions, a very strong argument that the action is not maintainable. Per Lord Ellenborough, in *Chamberlain, administrator,* v. *Williamson*, 2 M. & S. 415 ; per Wilde, J., in *Stebbins* v. *Palmer*, 1 Pick. 79. The general rule, that executors and administrators are bound by the contracts of the deceased, has its exception,

which is as well settled as the rule itself, viz., that contracts
which are of a personal nature do not survive. 2 Williams on
Executors, 1467; 1 Parsons on Contracts, 110, &c. Thus, for
breach of a promise of marriage, the executor of neither party
can maintain, or is liable to an action. *Chamberlain, adminis-
trator* v. *Williamson,* 2 Maule & Sel. 415 : *Stebbins* v. *Palmer,*
1 Pick. 79; *Smith* v. *Sherman,* 4 Cush. 408. So, a contract by
an author to compose a work, *Marshall* v. *Broadhurst,* 1 Tyrwh.
349, or by a party not to exercise a particular trade, *Cooke* v.
*Colcraft,* 2 Wm. Blacks. 856, s. c. 3 Wils. 380, is discharged by
the death of the contractor. So a contract to furnish hemp of
the party's own raising. *Shultz & Co.* v. *Johnson, administra-
tor,* 5 B. Mon. 497. So, it was early held, that a contract of
apprenticeship was discharged by the death of the master. 3
Bacon's Abr. 556, G, and cases cited; *Baxter* v. *Burfield,* 2
Strange, 1266. So, the death of a servant within the term of
hiring discharges the contract, so that no action lies for the mas-
ter against the servant's executors or administrators, for its non-
performance. 1 Shep. Touch. 180; Gilb. on Cov. 472; and
this principle has been carried still further; and full performance
of service held to be excused by sickness, so as to allow a recovery
by a servant on a *quantum meruit. Dickey* v. *Linscott,* 20 Maine,
453; *Fenton* v. *Clarke,* 11 Verm. 557. So, even the prevalence
of a contagious disease in the neighborhood has also been held to
excuse full performance. *Lakeman* v. *Pollard,* 43 Maine, 463.

It is plain, therefore, that had the plaintiff died, the defendants'
intestate could have had no action against his estate. No action,
therefore, lies against the defendants. The survivorship must be
mutual if at all. *Valentine* v. *Norton,* 17 Shep. 194; *Stebbins*
v. *Palmer,* 1 Pick. 79, (Per Wilde, J.) The defendants are
prevented by the act of God, and by the law, from availing them-
selves of the services of the plaintiff. The contract is therefore
discharged. *Baylies et al.* v. *Fettyplace et al.* 7 Mass. 338, and
cases in the margin; *Knight* v. *Dean,* 9 Shep. 531. The doing of
the work by the plaintiff is the condition precedent of the liability
of the defendants to pay. By circumstances beyond the control
of both, the defendants are prevented from accepting performance,
and the plaintiff from performing this condition. Hence, the
obligation ceases. *Willington* v. *West Boylston,* 4 Pick. 101.

AMES, C. J.   It is, in general, true, that death does not absolve a man from his contracts; but that they must be performed by his personal representatives, or their non-performance compensated, out of his estate.   An exception to this rule, equally well established, at both the civil and common law, is, that in contracts in which performance depends upon the continued existence of a certain person or thing, a condition is implied, that the impossibility of performance arising from the perishing of the person or thing shall excuse the performance. The implication arises in spite of the unqualified character of the promissory words, because, from the nature of the contract, it is apparent that the parties contracted upon the basis of the continued existence of the particular person or chattel.   The books afford many illustrations of this reasonable mode of construing contracts, *de certo corpore,* as the civil law designation of them is, in furtherance of the presumed and probable intent of the parties.   The most obvious cases are, the death of a party to a contract of marriage before the time fixed by it for the marriage; the death of an author or artist before the time contracted for the finishing and delivery of the book, picture, statue, or other work of art; the death of a certain slave promised to be delivered, or of a horse promised to be redelivered, before the day set for delivery or redelivery; and the death of a master or apprentice before the expiration of the term of service limited in the indentures.   The bodily disability from supervening illness, as of an artist, from blindness, to paint the picture contracted for, or of a scholar to receive the instruction his father had stipulated should be received and paid for, has been held, for the like reason, to excuse each from the performance of his contract.   *Hall* v. *Wright,* 1 Ellis, Blackb. & Ellis, 746; *Stewart* v. *Loring,* 5 Allen's Rep. 306. The cases in support of these and other illustrations of the exception to the general rule are set down in the defendants' brief, and it is unnecessary to repeat them.   Both at the civil and the common law, it is necessary, that the party who would avail himself of this excuse for non-performance of the contract, should be without fault in the matter upon which he relies as an excuse.   The latest and most instructive case, upon this subject, so far as the discussion of the principle of decision is concerned, is that of

*Taylor* v. *Caldwell*, decided by the Queen's Bench, in May last, 8 Law Times Rep. 356. In that case it was held, that the parties were discharged from a contract to let a music hall for four specified days for a series of concerts, by the accidental destruction of the hall by fire before the first day arrived. The full and lucid exposition by Mr. Justice Blackburn, who delivered the opinion of the court, of the prior cases and of the principle· upon which they had· been decided, leaves nothing further to be desired upon this subject.

Does the case at bar fall within the general rule, or within the exception we have been considering? This must depend upon the nature of the contract, whether one, requiring the continuing existence of the employer, Keach, for performance on his part, or one which could, according to its spirit and meaning, be performed by the defendants, his administrators. The contract was, to employ the plaintiff as clerk and agent of the intestate, in his business, in New York and Philadelphia; and it seems to us undoubted, that the continued existence of both parties to the contract for the whole stipulated term, was the basis upon which the contract proceeded, and if called to their attention at the time of contract, must have been contemplated as such by them. The death of the plaintiff within the three years would certainly have been a legal excuse from the further performance ·of his contract; since it was an employment of confidence and skill, the duties of which, in the spirit of the contract, could be fulfilled by him alone. If this be the law in application to a covenant for ordinary service, (Sheppard's Touchstone, 180,) how much more in application to a contract for service of such confidence and skill as that of a clerk and agent for sale. On the other hand, this employment could continue no longer than the business in which the employer was engaged, and the plaintiff retained. The intestate, when living, could, by the contract, have required the services of the plaintiff in no other ·business than that in which he had engaged him, and with no other person than himself. It would seem, then, necessarily to follow, that when the death of the employer put a stop to this business, and left no legal right over it in the administrators, except to close it up with the least loss to the estate of their decedent, they were, by the contract, bound no

longer to employ the plaintiff, any more than he to serve them. The act of God had taken away the master and principal,—the law had revoked his agency, and stopped the business to which alone his contract bound him,—and if he would serve the administrators in winding up the estate, it must be under a new contract with them, and under renewed powers granted by them. Any other result than that this contract of service was upon the implied condition, that the employer, as well as the employed, was to continue to live during the stipulated term of employment, would involve us in the strange conclusion, that the administrators might go on with the business of their intestate, in which the plaintiff must continue with powers unrevoked by the death of his principal, or, that he, with new powers from them, was bound by the contract to serve them as new masters, and in a different service, and that they were bound to grant him such powers, and employ him for the stipulated time in such service. The novelty of such a claim, and the contradiction of well-settled principles necessary to maintain it, justify the ruling of the Judge who tried the cause; and this motion must be dismissed with costs, and judgment entered upon the verdict.